MANSFIELD, Justice
(dissenting).
I respectfully dissent. I believe the majority misreads Iowa Code section 669.13(2). A common law tort claim authorized only by chapter 669 is not a claim under “any other law.” Based on its statutory misreading, the majority allows this litigant to roam from court to agency and back to court again, over an incident that occurred in 2006. This undermines the goals of timeliness and efficiency that underlie chapter 669.
Section 669.13 provides:
1. Except as provided in section 614.8, a claim or suit otherwise permitted under this chapter shall be forever barred, unless within two years after the claim accrued, the claim is made in writing and filed with the director of the department of management under this chapter. The time to begin a suit under this chapter shall be extended for a period of six months from the date of mailing of notice to the claimant by the attorney general as to the final disposition of the claim or from the date of withdrawal of the claim under section 669.5, if the time to begin suit would otherwise expire before the end of the period.
2. If a claim is made or filed under any other law of this state and a determination is made by a state agency or court that this chapter provides the exclusive remedy for the claim, the two-year period authorized in subsection 1 to make a claim and to begin a suit under this chapter shall be extended for a period of six months from the date of the court order making such determination or the date of mailing of notice to the claimant of such determination by a state agency, if the time to make the claim and to begin the suit under this chapter would otherwise expire before the end of the two-year period. The time to begin a suit under this chapter may be further extended as provided in subsection 1.
3. This section is the only statute of limitations applicable to claims as defined in this chapter.
Iowa Code § 669.13 (2007).
As subsection 2 makes clear, the original claim must have been filed or made under “other law.” The common law of torts is *735 not other law; it is law covered by chapter 669. See McGill v. Fish, 790 N.W.2d 113, 120 (Iowa 2010) (“[T]he [Iowa Tort Claims Act (ITCA) ] did not create a new cause of action, but recognized a remedy for existing causes of action previously unavailable because of sovereign immunity.”). The dissenting judge on the court of appeals makes this point very cogently. See Rivera v. Woodward Res. Ctr., No. 11-1784, 2012 WL 5536117, at *11 (Iowa Ct.App. Nov. 15, 2012) (Eisenhauer, C.J., dissenting). At all times, Rivera’s lawsuit was against the State of Iowa for money only, on account of loss of property (i.e., employment), caused by the wrongful act of employees of the state acting within the scope of their office or employment. See Iowa Code § 669.2(3)(a). No other legal basis for an action was asserted.
In my view, the majority decision is contrary to Bensley v. State, 468 N.W.2d 444 (Iowa 1991). There, a fatal .car accident occurred on February 4, 1983, on a state highway. Bensley, 468 N.W.2d at 444. On June 28, 1984, three estates filed claims with the state appeal board alleging that the state’s negligent maintenance of the highway caused the deaths. Id. The next day, June 29, without waiting for a response from the appeal board, the estates filed a lawsuit against the state in district court. Id. at 445. On November 26, two of the estates were notified by the appeal board that their claims had been denied. Id. at 444-45. Over two years later, on March 9, 1987, the district court dismissed the estates’ first lawsuit. Id. at 445. On May 15, the estates commenced a second action, which the district court then also dismissed. Id.
On appeal from the latter dismissal, we ruled that the second lawsuit was properly dismissed as to the two estates that had received a notice of administrative denial in 1984. Id. at 447. We specifically rejected the plaintiffs’ argument that the filing of the first suit could ■ salvage their second suit under what is now section ■669.13(2). Id. We explained that this section “requires that a claim be filed under any other law of this state before the possibility of extending the statute of limitations exists.” Id. The first suit was not such a claim. Id.
In Bensley, we did say that the first suit was “filed under chapter 25A [now chapter 669].” Id. But as the State has demonstrated, in Bensley (as here), the petition was simply brought as a common law action without any reference to the ITCA. Such a claim, we concluded in Bensley, was not a claim finder “any other law.” Id: In short, Bensley indicates that to take advantage of subsection 2, the plaintiff must .have asserted some basis other than the common law of torts for the initial claim.
The majority also disregards the context in which section 669.13 was enacted. Historically, the rule of sovereign immunity protected the state from suit. Everyone knew that. See Don R. Bennett, Handling State Tort Claims and Suits Against the State of Iowa: Part I, 17 Drake L. Rev. 189,189 (1968) [hereinafter Bennett]' (“Pri- or to passage of the Iowa Tort Claims Act in 1965, the maxim that ‘the King can do no wrong’ prevailed in Iowa. No tort action could be maintained against the State or its agencies.” (footnote omitted)).
In 1965, to great fanfare, all that was changed when the general assembly adopted the ITCA. 1965 Iowa Acts ch. 79 (currently codified as amended at Iowa Code ch. 669). At that time, the legislature included section 13, which had substantially the same wording as section 669.13 today. Compare Iowa Code § 25A.13 (1966), with id. § 669A13 (2013).
Given this • historical context, I cannot accept the majority’s notion that subsection 2 was designed to protect the attorney *736 who had just fallen off the apple cart in 1965 and did not know you could not sue the state for a tort at common law. That defies practical reality. At the time, any need for such protection for attorneys would have seemed quite odd. Rather, subsection 2’s purpose was to protect the attorney who brought a claim against the state based on some other statutory scheme that also involved a waiver of sovereign immunity but which was ultimately found to be inapplicable.[3] “[A]ny other law of this state” would have been clearly understood to mean some positive law other than a common law tort claim supported only by the ITCA. This is confirmed by a contemporary observer:
[I]f a tort suit was commenced against a State agency under some other law of the State and the court determined that Chapter 25A [now chapter 669] of the Iowa Code provided the exclusive remedy, a claim could seemingly be made against the State if the Act’s limitation provision had not expired when the suit against the agency was commenced.
Bennett, 17 Drake L. Rev. at 198-99 (footnote omitted). Notably, this commentator makes clear that the “tort suit” has to be commenced “under some other law of the State,” not merely the law of torts. See id.
Finally, my colleagues contend it would lead to “strained, impractical, or absurd results” if the savings clause in section 669.13(2) applied to claims under other statutes but not common law tort claims. Their specific example involves claims against the state for contribution, which are governed by a separate statute (chapter 668). According to the majority, those claims would end up being treated differently from common law tort claims against the state brought by an injured party.
This is a nice theoretical point, but the actual statutes do not back it up. Section 668.10(2) provides, “In any action brought pursuant to this chapter, the state shall not be assigned a percentage of fault for contribution unless the party claiming contribution has given the state notice of the claim pursuant to section 669.13.” Thus, a tortfeasor who, like Rivera, filed a lawsuit against the state without having complied with section 669.13 would get no tolling benefit. In fact, such a claimant would be totally out of luck because he or she would have no line in the jury verdict assigning fault to the state on which he or she could rely. In other words, the legislature recognized the need for consistency and provided that a tortfeasor who walks into court filing a contribution claim against the state, without complying with the notice requirement, would fare no better than an injured party who did the same. The majority’s example is not an issue.
For the foregoing reasons, I respectfully dissent.
WATERMAN, J., joins this dissent.

. The State has provided a couple of examples of such schemes. For instance, employees of the State of Iowa have been able to bring workers' compensation claims against the state for the past 100 years. See Iowa Code § 85.2 (2013) (predecessor codified at Iowa Code § 2477-m(b) (Supp.1913)). When the ITCA was enacted, subsection 2 served a useful purpose by protecting the individual who had brought a workers' compensation claim against the state in the event it was later determined the individual was an independent contractor.